IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| B.T., by and through his Mother, M.T., | ) ) ) | Civil No. 10-00456 SOM/RLP |
| Plaintiff, | ) ) | ORDER AFFIRMING IN PART AND REVERSING IN PART HEARING |
| vs. | ) ) | OFFICER'S DECISION; ORDER REMANDING LIMITED ISSUES TO |
| DEPARTMENT OF EDUCATION, State of Hawaii, | ) ) ) | HEARING OFFICER |
| Defendant. | ) ) | |
| _____ | ) | |

ORDER AFFIRMING IN PART AND REVERSING IN PART HEARING OFFICER'S
DECISION; ORDER REMANDING LIMITED ISSUES TO HEARING OFFICER

I.      INTRODUCTION.

        This case involves a further appeal of a hearing

officer's administrative decision regarding a student's benefits

under the Individuals with Disabilities Education Act ("IDEA").

Although this court affirms most of the hearing officer's

decision, the court regrets that it cannot provide the parties

with a ruling that ends this case.  Instead, despite the already

lengthy history of this case, the court reluctantly remands this

case to a hearing officer to determine two narrow issues:

1) what, if any, specific goals contained in the 2007

Individualized Education Program ("IEP") were not implemented or

not timely implemented? and 2) should compensatory education be

awarded to make up for any alleged failure to implement or timely

implement those goals?

Mother and Student are proceeding in this matter without disclosing their names. See ECF No. 5-2. The court therefore refers to them in this order only as Mother and Student, and collectively refers to them as Plaintiffs.

Plaintiffs seek two years of compensatory education because the State of Hawaii Department of Education ("DOE") allegedly delayed the implementation of Student's 2007 IEP for several months. Plaintiffs say that, as a result, Student regressed academically at a mainland school. The court reverses the Hearing Officer to the extent he determined that the DOE was not responsible for any of the delay in implementing Student's 2007 IEP, as the DOE was clearly responsible for some of the delay given its refusal to allow Heartspring to implement the 2007 IEP. The court remands to the Hearing Officer the issue of how much delay was caused by that refusal. Included in that issue is the question of whether the DOE was responsible for Heartspring's failure to even know about the IEP's contents until late January 2008, when the DOE says it mailed the IEP to Heartspring, or late February 2008, when Heartspring says it found a copy of the IEP in Student's suitcase. The court notes that the delay may have begun at the earliest in November 2007, when the IEP became effective, and may have ended at the latest in June 2008, when Mother says that Heartspring began implementing the goals of the 2007 IEP.

On remand, the Hearing Officer shall determine what, if any, goals contained in the 2007 IEP were delayed. The Hearing Officer shall also determine which, if any, goals were ignored because Heartspring allegedly concentrated on Student's life skills. The Hearing Officer shall then determine whether any delay in implementing or failure to implement any of the goals contained in the 2007 IEP denied Student a FAPE and what, if any, compensatory education is therefore appropriate. The court, however, determines that Student is not entitled to compensatory education relating to Student's regression as of July 2010.

Finally, the court rules that the DOE need not retroactively reimburse Plaintiffs for Student's expenses at Loveland Academy after he turned twenty-two years of age.

II.     STATUTORY FRAMEWORK.

The IDEA "is a comprehensive educational scheme, conferring on disabled students a substantive right to public education." Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992) (citing Honig v. Doe, 484 U.S. 305, 310 (1988)).

For a state to qualify for federal financial assistance under the IDEA, it "must demonstrate that it 'has in effect a policy that assures all handicapped children the right to a free appropriate public education'" ("FAPE"). Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 180-

81 (1982) ("Rowley") (quoting 20 U.S.C. § 1412(1)).  According to

the IDEA, a FAPE consists of:

> special education and services that-
>
> (A) have been provided at public expense,
> under public supervision and direction, and
> without charge;
>
> (B) meet the school standards of the State
> educational agency;
>
> (C) include an appropriate preschool,
> elementary school or secondary school
> education in the State involved; and
>
> (D) are provided in conformity with the
> individualized education program required
> under section 1414(d) of this title.

20 U.S.C. § 1401(9).  To provide a FAPE in compliance with the

IDEA, a state educational agency receiving federal funds must

evaluate a student, determine whether that student is eligible

for special education and services, and tailor and implement an

individualized education program ("IEP") appropriate for the

unique needs of the student.  20 U.S.C. § 1414; Rowley, 458 U.S.

at 181.

The IEP is prepared at a meeting between a qualified

representative of the local educational agency, the child's

teacher, the child's parents or guardian, and, when appropriate,

the child.  The IEP consists of a written document containing:

> (i) A statement of the present levels of
> educational performance ["PLEPS"] of the
> child;

4

(ii) A statement of annual goals, including short-term instructional objectives;

(iii) A statement of the specific educational services to be provided to the child, and the extent to which the child will be able to participate in regular educational programs;

. . . .

(v) The projected date for initiation and anticipated duration of these services; and

(vi) Appropriate objective criteria and evaluation procedures and schedules for determining on at least an annual basis, whether instructional objectives are being achieved.

34 C.F.R. § 222.50; see also 20 U.S.C. § 1414(d). Local or regional educational agencies must review, and, when appropriate, revise each child's IEP at least annually. 20 U.S.C. § 1414(d)(4). In addition, "[p]arental involvement is a central feature of the IDEA." Hoeft, 967 F.2d at 1300. "Parents participate along with teachers and school district representatives in the process of determining what constitutes a 'free appropriate education' for each disabled child." Id.

In addition to the IEP, the IDEA also requires written prior notice to parents when an educational agency proposes, or refuses, to initiate or change the educational placement of a disabled child. See 20 U.S.C. § 1415(b)(3).

Violations of the IDEA may arise in two situations. First, a school district, in creating and implementing an IEP,

may run afoul of the IDEA's procedural requirements.  <u>Rowley</u>, 458 U.S. at 205-06.  Second, a school district may become liable for a substantive violation of the IDEA by drafting an IEP that is not reasonably calculated to enable the child to receive educational benefits.  <u>Id.</u> at 206-07.  The district must provide the student with a FAPE that is "appropriately designed and implemented so as to convey" to the student a "meaningful" benefit, <u>see</u> <u>Adams v. Oregon</u>, 195 F.3d 1141, 1149 (9th Cir. 1999), but the district need not provide the student with a "potential-maximizing education."  <u>JG v. Douglas County Sch. Dist.</u>, 552 F.3d 786, 793 (9th Cir. 2008) (quoting <u>Rowley</u>, 458 U.S. at 201).

While the IDEA guarantees certain procedural safeguards for children and parents, the Ninth Circuit has recognized that not every procedural violation results in denial of a FAPE.  <u>See</u> <u>L.M. v. Capistrano Unified Sch. Dist.</u>, 556 F.3d 900, 909 (9th Cir. 2009) ("Procedural flaws in the IEP process do not always amount to the denial of a FAPE.").  Procedural flaws in the IEP process only deny a child a FAPE when the flaws affect the "substantive rights" of the parent or child.  <u>Id.</u>  Such substantive rights include the loss of a child's educational opportunity or an infringement on the parents' opportunity to participate in the IEP process.  <u>Id.</u>

When a public school fails to provide a FAPE, and the parent establishes that placement at a private school is appropriate, the IDEA authorizes reimbursement.  <u>See</u> 20 U.S.C. § 1412 (a)(10)(C)(ii); <u>Sch. Comm. of Burlington v. Dep't of Ed. of Mass.</u>, 471 U.S. 359, 370 (1985).  Additionally, courts have discretion to award compensatory educational services when appropriate.  <u>See</u> <u>Park v. Anaheim Union High Sch. Dist.</u>, 464 F.3d 1025, 1033 (9th Cir. 2006).

III.    <u>BACKGROUND</u>

There is no dispute that Student has severe autism and that he was entitled to services under the IDEA.  In May 2005, Student began attending Heartspring School in Wichita, Kansas.

After IEP meetings on October 29, 2007, and November 6 and 16, 2007, a 2007 IEP was developed for Student.  <u>See</u> Res. Ex. 2 at BT 40 to BT 71.  The 2007 IEP set various goals for Student. <u>See</u> <u>id.</u> at BT 51 to BT 69.  Its projected start date was November 6, 2007.  <u>Id.</u> at BT 70.  There is no dispute that the IEP's goals were not implemented by Heartspring on that date.  In fact, the DOE did not mail the 2007 IEP to Heartspring until January 30, 2008.  <u>See</u> Res. Ex. 9 at BT 220.  The record does not clearly reflect why it took more than two months to mail the 2007 IEP to Heartspring.  The record also does not clearly establish why Heartspring might not have received the IEP shortly after January 30, 2008.

On December 14, 2007, the DOE gave Mother a Prior
Written Notice of Department Action in which the DOE proposed to
transfer Student from Heartspring in Kansas to a "Residential
Facility/Adult Foster Home (with a Special School component)" on
Oahu, Hawaii.  See Res. Ex. 6 at BT 112.

On January 31, 2008, Mother requested a due process
hearing under the IDEA to challenge the DOE's suggested transfer
of Student from Kansas to Hawaii.  See Request for Due Process
Hearing, Jan. 31, 2008, Resp. Ex. 9 at BT 261-62.  In addition to
challenging the appropriateness of transferring Student from
Heartspring in Kansas to Hawaii, Mother asserted that the 2007
IEP was "inadequate because it fails to provide that objectives
and goals will apply across all settings (i.e., residence,
school, community, etc.)."  Id. at BT 261.  Mother therefore did
not object to the implementation of the goals of the 2007 IEP.
See id.

On or about February 26, 2008, Kim Thomas of
Heartspring emailed Mother to say that Heartspring had just found
an IEP in Student's suitcase upon Student's return from having
received extended school year education at Loveland Academy in
Hawaii over the 2007-08 winter break.  Thomas asked Mother in
that email whether Mother agreed with any of the goals in the
IEP.  See Pet. Ex. 31 at page HDRC 00589.  One day later, Mother

8

responded via email, "Yes, let's move forward with the Goals of the new IEP." Id.

In early April 2008, Mother contacted Heartspring, asking whether it had been in touch with anyone at the DOE about implementing the goals of the 2007 IEP. See Pet. Ex. 31 at HDRC 00588. On April 4, 2008, Heartspring responded via email that it had been told by the DOE that, because Mother had not accepted the 2007 IEP, it should not be implemented at all. Pet. Ex. 31 at HDRC 00587; see also Reporter's Transcript of Proceedings, Nov. 20, 2008, at 80 (Mother testifying that Heartspring told her that, because she had requested a due process hearing in January 2008 to challenge that transfer, Heartspring would not implement the IEP until the DOE gave Heartspring permission to do so).

On April 18, 2008, the DOE wrote to Mother, asking her to identify what in the 2007 IEP she agreed with and what she disagreed with. See Letter from Marcus Dacanay to Mother, Apr. 18, 2008, Res. Ex. 9 at BT 283.

On April 25, 2008, Mother wrote to the DOE, complaining about the DOE's five-month refusal to allow Heartspring to implement the 2007 IEP's goals. See Letter from Mother to Laurie Seu, Apr. 25, 2008, Res. Ex. 9 at BT 284.

On May 17, 2008, Mother wrote to the DOE, stating that she was "in agreement with the 2007 Goals as written and

implemented at Heartspring (ie, across all settings)." Res.
Ex. 9 at BT 290.

On May 19, 2008, Mother was informed via email that
Heartspring had been "unofficially running the new goals" and
that "at no time has [Student] been deprived of his educational
services." See Email from Sylvia Jimenez-Borst to Mother, May
19, 2008, Res. Ex. 9 at BT 292. However, in June 2008, Mother
was told by a speech pathologist at Heartspring that it had "just
implemented the [goals] we suggested a while ago." Pet. Ex. 31
at HDRC 00586; FoF 39. Mother concludes that the goals of
Student's 2007 IEP were implemented in June 2008. See
Petitioner's Opening Brief at 5, Jan. 10, 2011, ECF No. 22.

On July 2, 2008, Mother requested another due process
hearing, challenging the DOE's determination that Student would
"age out" on July 4, 2008, when Student turned twenty years old.
Mother also sought compensatory education.

Heartspring has reported the progress towards Student's
2007 IEP goals. That progress is set forth in Respondent's
Exhibit 43, which indicates that, by November 2008, most of the
goals in the 2007 IEP had been met.

Mother's due process hearing requests were consolidated
and, on January 14, 2009, Senior Hearing Officer Rodney A. Maile
issued Findings of Fact and Conclusions of Law. See Resp. Ex.
37. The Hearing Officer determined that the DOE had not violated

the IDEA by terminating Student's special education and related expenses.  Id.  Mother appealed.

On December 17, 2009, after lengthy appellate proceedings, Judge David Alan Ezra reversed the Hearing Officer's decision in part.  See Order: (1) Reversing in Part the Administrative Hearing Officer's Findings of Fact, Conclusions of Law and Decision; and (2) Remanding to the Hearing Officer on the Issue of Compensatory Education, Civ Nos. 08-00356 DAE-BMK and 09-00059 DAE-BMK, Dec. 17, 2009, ECF No. 141 (attached as Administrative Record on Appeal Ex. No. 1).

Judge Ezra reversed the Hearing Officer's determination that Student had "aged out" when he turned twenty years old, ruling that the DOE was required to provide special education to Student under the IDEA through age twenty-one, if the IEP team determined that such education was warranted.  Id. at 8.

With respect to the two years of compensatory education sought by Mother, Judge Ezra ruled that a two-year limitation period barred compensatory education premised on events occurring before July 2, 2006.  Id. at 9-10.  Judge Ezra additionally ruled that, to the extent compensatory education was sought based on alleged failures to update Student's 2005 and 2006 IEPs, Mother had failed to raise those issues before the Hearing Officer.  Id. at 11-12.  Given the failure to exhaust the issue of whether the

2005 and/or 2006 IEPs had been updated, Judge Ezra ruled that he lacked jurisdiction to review the issue. Id. at 13.

Judge Ezra remanded to the Hearing Officer the issue of whether any untimely implementation of the 2007 IEP warranted compensatory education. Because the Hearing Officer had assumed that the DOE was entitled to stop providing services to Student when he reached age twenty, the record had not been sufficiently developed for Judge Ezra to determine the issue. See id. at 14-15.

Judge Ezra also determined that the Hearing Officer had not sufficiently addressed the issue of whether the failure to timely implement the 2007 IEP's goals caused Student's regression. Id. at 15.

In his order of December 17, 2009, Judge Ezra remanded the case to the Hearing Officer with the following instructions:

> The Hearing Officer is directed to consider evidence regarding B.T.'s current[] needs, the testimony submitted by Plaintiff regarding B.T.'s alleged "regression" while at Heartland, the current IEP, whether Defendant did indeed fail to implement the November 2007 IEP for reasons other than B.T.'s "aging out," and whether compensatory education would benefit B.T. at this time. When evaluating B.T.'s status, Hearing Officer Maile is directed to take note that the Court has ruled that Defendant may not deny FAPE on the basis of attaining age 20 alone. Hearing Officer Maile must provide a detailed explanation as to why or why not compensatory education is warranted and his reasons for developing a particular compensatory program.

> The "stay put" order for B.T.'s
> education shall remain in effect pending the
> Court's final disposition of these issues.

Id. at 16-17.

On remand, the Hearing Officer granted a motion in limine filed by the DOE, ruling that, based on Judge Ezra's statute of limitation decision, Mother could not introduce evidence from 2002 and 2003 in support of her compensatory education claim. See Administrative Record on Appeal Ex. No. 8 at 6. The Hearing Officer also ruled that Mother could not introduce evidence regarding the alleged failure to update the 2005 IEP because, having not been properly raised in the initial pleadings, the matter was barred by the applicable statute of limitation. Id. at 4.

On July 12, 2010, after subsequent proceedings, the Hearing Officer issued Findings of Fact, Conclusions of Law and Decision on Remand. See Administrative Record on Appeal Ex. No. 17. He found that Student "is severely disabled by autism and requires supervision 24 hours a day, seven days a week." Finding of Fact ("FoF") 1.

During the remand hearing, Student's teacher testified that he had worked with student since 2002. Before going to Heartspring in 2005, Student had been reading at the third- and fourth-grade level and reading about 600 words in the Dolch word system. Reporter's Transcript of Proceedings, Nov. 20, 2008, at

167-68.  When Student returned to Loveland in 2008, Student's academic skills had regressed.  Id.  For example, Student was only reading at the second-grade level.  Id. at 167.  The teacher testified that he believed Student's regression resulted from Heartspring's concentration on Student's life skills training, rather than on academics.  Id. at 168.

In or around December 2009, Student showed signs of possible tardive dyskinesia, a debilitating central nervous system disorder caused by certain medications.  Reporter's Transcript of Proceedings, May 10, 2010, at 24, 62-63, 114. Student's psychiatrist determined that Student needed to be weaned off the psychotropic medication suspected of causing the condition.  Id.  Student was thereafter weaned off his medication in or around January 2010 and became unable to perform or work on any of his IEP goals.  Id.  Student subsequently resumed taking the medication and stabilized.  Id. at 65.

Based on the Present Levels of Educational Performance, the Hearing Officer determined that Heartspring had abandoned the 2007 IEP in favor of placing Student in a supported employment program without an aide.  Heartspring told Student's IEP team that Student "spends most of his time outside the classroom participating in functional work tasks."  FoF 42-43.

Although there was no real dispute that Student would benefit from compensatory education, the issue before the Hearing

Officer was whether Student was entitled to have the DOE provide such compensatory education. In his Conclusions of Law, the Hearing Officer decided that the DOE was not at fault for having asked Mother to provide a written statement allowing the DOE to have Heartspring implement the 2007 IEP before putting it into effect. He also concluded that Student's current conditions and needs (his regression) was the result of the tardive dyskinesia diagnosis, not the failure to have the 2007 IEP implemented beginning in November 2007. Finally, although there was evidence indicating that Student would have benefitted from additional compensatory education, the Hearing Officer concluded that, because Student had received all of the required educational and related services at Loveland, Student was not entitled to compensatory education.

On August 6, 2010, Mother appealed the Hearing Officer's July 12, 2010, decision. See ECF No. 1. Mother raises the following issues in her Complaint:

1.     Whether the failure to timely implement the 2007 IEP was caused by Mother's refusal to sign off on it or by something the DOE was responsible for. See Complaint, First Claim for Relief ¶¶ 25-26.

2.     Whether Student's regression was caused by the perceived tardive dyskinesia and changes in Student's

medication, or by the failure to timely implement the 2007 IEP.  <u>See</u> Complaint, Second Claim for Relief ¶ 28.

3.    Whether the Hearing Officer had erred in concluding that Student had received all necessary educational and related services despite finding that there was evidence that Student would benefit from compensatory education.  <u>See</u> Complaint, Third Claim for Relief ¶ 30.

4.    Whether the Hearing Officer had erroneously excluded evidence concerning the DOE's alleged failure to update Student's 2005 IEP.  <u>See</u> Complaint, Fourth Claim for Relief, ¶ 32; and Fifth Claim for Relief ¶ 34.

5.    Whether the Hearing Officer abused his discretion sustaining the DOE's objections to questions regarding the DOE's alleged failure to implement the 2007 IEP. <u>See</u> Complaint, Sixth Claim for Relief ¶ 36.

Plaintiffs' Opening Brief raises the following additional issues:

6.    Whether a FAPE was denied when Heartspring School allegedly abandoned the 2007 IEP by having Student spend most of his time outside the classroom participating in functional work tasks without a vocational aide.

7.      Whether Student's regression automatically equals a
        denial of a FAPE because, if Student regressed, he must
        not have been receiving "some educational benefit."

8.      Whether Student should be awarded compensatory
        education.

9.      Whether Student should be reimbursed for Loveland's
        services from July 5, 2010, to the date of the court's
        order "pursuant to this Court's ordered entered on
        December 17, 2009 in Civil No 08-00356 DAE-BMK, Doc.
        No. 141 at 18."

IV.     <u>STANDARD OF REVIEW.</u>

        Any party aggrieved by the decision of a due process
hearings officer under the IDEA may appeal the findings and
decision to any state court or a United States district court.
20 U.S.C. § 1415(i)(2).  The party challenging the administrative
decision has the burden of proving deficiencies in the
administrative decision.  <u>Seattle Sch. Dist. No. 1 v. B.S.</u>, 82
F.3d 1493, 1498 (9th Cir. 1996).

        When evaluating an appeal of an administrative
decision, a court "(i) shall receive the records of the
administrative proceedings; (ii) shall hear additional evidence
at the request of a party; and (iii) basing its decision on the
preponderance of the evidence, shall grant such relief as the
court determines is appropriate."  20 U.S.C. § 1415(i)(2)(c).

Unlike with reviews of other administrative proceedings, this court does not employ a "highly deferential standard of review" to appeals involving the IDEA. J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 949 (9th Cir. 2010). Nor does this court use a de novo review standard. Instead, the court gives "due weight" to IDEA administrative proceedings, giving "particular deference to 'thorough and careful' administrative findings." Id. In recognition of the expertise of the administrative agency, this court considers findings carefully but is "free to accept or reject . . . findings in part or in whole," giving weight to those finding as the court feels is appropriate. See County of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996).

V.      ANALYSIS.

        A.    Plaintiffs Have Abandoned Their Claim That the
              Hearing Officer Abused His Discretion in
              Sustaining the DOE's Objections to Questions
              Regarding the DOE's Alleged Failure to Implement
              the 2007 IEP.

In the Sixth Claim for Relief asserted in the Complaint, Plaintiffs claim that the Hearing Officer abused his discretion in sustaining the DOE's objections to questions regarding the DOE's alleged failure to implement the 2007 IEP. See Complaint, Sixth Claim for Relief ¶ 36. Plaintiffs have since abandoned that claim.

B.  The Hearing Officer Did Not Err in Precluding
    Evidence Regarding the Alleged Failure by the DOE
    to Update Student's 2005 IEP.

In the last appeal to this court, Judge Ezra ruled that

Plaintiffs had not properly raised to the Hearing Officer the

issue of the DOE's alleged failure to update Student's 2005 IEP.

See Order at 11, Dec. 17, 2009, Civ. Nos. 08-00356 DAE/BMK and

09-00059 DAE/BMK.  On remand, Plaintiffs sought to have the

Hearing Officer address the issue.  The Hearing Officer properly

barred the introduction of evidence regarding that issue because

the issue had not been raised in the initial requests for due

process hearing and was barred by the applicable two-year

limitation period.  See 34 C.F.R. § 300.507(a)(2) ("The due

process complaint must allege a violation that occurred not more

than two years before the date the parent or public agency knew

or should have known about the alleged action that forms the

basis of the due process complaint . . . .").

Plaintiffs argue that the Hearing Officer improperly

restricted the issues on remand by not allowing the updating of

the 2005 IEP issue to be litigated.  However, Plaintiffs do not

describe how the failure to update the 2005 IEP was timely raised

within two years of that failure.  It is not incumbent on this

court to scour the voluminous record to attempt to figure out the

bases of this claim.  The court concludes that the Hearing

Officer properly prohibited evidence regarding the time-barred

claim pertaining to the updating of Student's 2005 IEP, and the DOE prevails on the Fourth and Fifth Claims for Relief asserted in the Complaint.

>          C.    This Court Remands to the Hearing Officer the
>                Issue of What Delay in Implementing the 2007 IEP
>                Goals Was the DOE's Fault and Whether Any Such
>                Delay Caused the Denial of a FAPE to Student for
>                Any Specific Period.

Mother challenges the Hearing Officer's determination that the DOE was not responsible for Heartspring's delay in implementing the 2007 IEP, which Mother says was implemented in June 2008, rather than November 2007. In declining to fault the DOE for the delay in the implementation of the goals of Student's 2007 IEP, the Hearing Officer reasoned that the DOE had been justified in asking Mother to provide some sort of written statement allowing the DOE to have Heartspring implement the 2007 IEP before it was actually in effect. This court reverses the Hearing Officer's decision on this point, determining that the Hearing Officer did not take into account all of the relevant facts in making that determination. The court remands the issue to the Hearing Officer to determine the issue in light of all of the facts.

Student's 2007 IEP was completed in November 2007 but not sent to Heartspring until, at the earliest, the end of January 2008. See Res. Ex. 9 at BT 220. Heartspring says that it did not see the 2007 IEP until about February 26, 2008, when a

copy of it was discovered in Student's suitcase upon his return from Hawaii.  See Pet. Ex. 31 at page HDRC 00589.  The Hearing Officer did not take into account the delay from November 2007 to either late January or late February 2008 in determining that the DOE was not responsible for the allegedly untimely implementation of the goals of the 2007 IEP.

Whether Heartspring received the 2007 IEP in January or February 2008, it apparently did not officially implement it until later, although Heartspring claims to have been unofficially running the new goals.  In the interim, Heartspring was waiting for the DOE to indicate that Heartspring should indeed implement the 2007 IEP.  The Hearing Officer found that he could not fault the DOE for the delay given Mother's filing of the January 2008 due process hearing request.  However, that due process hearing request only challenged the January 2008 prior written notice that the DOE intended to transfer Student from Kansas to Oahu and sought to have the 2007 IEP's goals implemented in all phases of Student's life.  Mother did not challenge the appropriateness of the goals themselves and, when asked in February 2008, she specifically gave her permission for implementation of the goals to begin.  It was the DOE that refused to give Heartspring permission to begin implementing the 2007 IEP goals while the due process hearing was pending, even though that hearing did not relate to those goals.  Given the

DOE's admission at the hearing before this court that parts of the IEP that are not challenged should be in effect, the Hearing Officer erred when he concluded that he "couldn't fault" the DOE for the delay.

This court concludes that any delay after late February 2008 was attributable to the DOE but remands to the Hearing Officer the issues of (1) whether the DOE caused any delay before February 2008, (2) if there was a delay before February 2008, the dates from which and until which the DOE caused such delay, and (3) whether any delay before February 2008 that the DOE caused and/or any delay after February 2008 (which latter delay the DOE is determined by this court to have caused) caused the denial of a FAPE to Student. To clarify, this remand includes the question of when Heartspring began implementing the goals and whether any delay denied Student a FAPE.

> D. While the Hearing Officer Did Not Err in Determining that Student's Regression as of July 2010 Was Due to Perceived Tardive Dyskinesia, Rather than the Alleged Failure to Timely Implement the 2007 IEP, the Court Remands to the Hearing Officer the Issue of Whether and to What Extent Academic Goals Contained in the 2007 IEP Were Ignored by Heartspring.

When Student returned from Heartspring in 2008, he had academically regressed. For example, his reading had gone from the third- or fourth-grade level to the second-grade level. Student's teacher blamed this regression on Heartspring's concentration on life skills, rather than on academics. In other

words, Heartspring was blamed for having failed to follow the IEP and having instead concentrated on "functional work tasks" rather than academics.  The Hearing Officer determined that Student's <u>current</u> conditions were the result of tardive dyskinesia and not the failure to timely implement the 2007 IEP.  <u>See</u> Administrative Record on Appeal Ex. No. 17 at 000212.  But the Hearing Officer did not determine whether and to what extent a FAPE was denied when Heartspring allegedly ignored the 2007 IEP's goals in favor of life skills.

The court agrees that the record supports the Hearing Officer's conclusions that Student's condition in July 2010 was caused by the change in medication that related to the suspected tardive dyskinesia.  Student was weaned from his medication in January 2010.  He began to be unable to perform his work soon thereafter.  Once Student resumed his medication, his condition stabilized.  However, the record does not establish whether and to what extent academic goals contained in the 2007 IEP were ignored by Heartspring.  The court therefore remands to the Hearing Officer the issue of whether and to what extent academic goals contained in the 2007 IEP were ignored by Heartspring and the effect, if any, ignoring the goals had on Student's academics.

E.   The Issue of What Compensatory Education, If Any,
     Should Be Awarded is Remanded To the Hearing
     Officer.

The Hearing Officer concluded that, although Student
would certainly benefit from compensatory education, compensatory
education was not made necessary by any denial of a FAPE.

The Ninth Circuit has explained that

> Compensatory education services can be
> awarded as appropriate equitable relief.  20
> U.S.C. § 1415(i)(2)(B)(iii) ("shall grant
> such relief as the court determines
> appropriate");  Parents of Student W. v.
> Puyallup Sch. Dist., 31 F.3d 1489, 1496-97
> (9th Cir. 1994).  "Appropriate relief is
> relief designed to ensure that the student is
> appropriately educated within the meaning of
> the [Individuals with Disabilities Education
> Act]."  Parents of Student W., 31 F.3d at
> 1497.  The courts have discretion on how to
> craft the relief and "[t]here is no
> obligation to provide a day-for-day
> compensation for time missed."  Id.  We
> review the Hearing Officer's and the district
> court's award of compensatory education
> services for abuse of discretion.  Id. at
> 1496.

Park v. Anaheim Union High Sch. Dist., 464 F.3d 1025, 1033 (9th
Cir. 2006).

Mother seeks an award of two years of discretionary
compensatory education.  She seeks one year to recoup Student's
regression and a second year to give him an opportunity to
progress to where he would have been had a FAPE not been
allegedly denied by the failure to timely implement the 2007 IEP.
This court declines to award either at this time.

Mother seeks one year of compensatory education to make up for the academic regression Student suffered while at Heartspring.  The Hearing Officer rejected that request, ruling that the requested compensatory education was not necessary because Student's July 2010 regression was caused by the change in Student's medication.  To the extent the Hearing Officer determined that Student's regression as of July 2010 was caused by changes in his medication, the court finds no error by the Hearing Officer.  The court does not agree with Mother that, whenever a student regresses, a FAPE is automatically denied because the student did not receive "some educational benefit."

Mother seeks an additional year of compensatory education to make up for any delay and/or failure in implementing the goals of Student's 2007 IEP.  The court remands the compensatory education issue to the Hearing Officer to determine whether compensatory education is appropriate to compensate Student for any such delay.  In making that determination, the Hearing Officer shall first determine what goals contained in the 2007 IEP were not worked on or were otherwise delayed or ignored while Student was at Heartspring.  The Hearing Officer shall examine whether Heartspring ignored academic goals in favor of concentrating on Student's life skills.  The Hearing Officer shall then determine whether a FAPE was denied as a result and whether compensatory education is necessary to offset any delay

and/or failure to work on any goal in Student's 2007 IEP, taking into account whether the goals were eventually met and any continuing impact of the delay.

F.    Plaintiffs Are Not Entitled to the Requested Reimbursemnt.

Mother seeks reimbursement for services provided by Loveland Academy from and after July 5, 2010, when Student turned twenty-two years old.  The parties agree that Student was not eligible to receive IDEA services when he turned twenty-two years of age.  Rather than relying on the "stay put" provision of the IDEA, Plaintiffs claim entitlement to reimbursement because Judge Ezra ruled in his December 17, 2009, order that the "stay put" provision "shall remain in effect pending the Court's final disposition of these issues."  The court does not read Judge Ezra's order as requiring the DOE to provide "stay put" services for as long as this matter is being litigated even after Student becomes ineligible for them under the IDEA.  To read Judge Ezra's order otherwise would allow Student to receive services under "stay put" well after his entitlement to such services should have ended simply by keeping issues alive on appeal.  That is, such a reading would encourage challenges that parents knew were baseless.  The court is in no way implying that Mother raised any challenge she knew was baseless, but the court cannot read Judge Ezra's ruling as having condoned or encouraged that possibility.

To the contrary, Judge Ezra appeared well aware that services under the IDEA would end at age twenty-one.

VI.     CONCLUSION.

The court reverses in part, affirms in part, and remands limited issues for a Hearing Officer to first determine. The court reverses the Hearing Officer to the extent he determined that the DOE was not at all responsible for the delay in implementing the goals of Student's 2007 IEP.  The court determines that the DOE was responsible for any delay in implementing those goals after late February 2008 because the DOE refused to consent to Heartspring's implementation of the goals. However, the court remands to the Hearing Officer the issue of whether and to what extent the DOE was responsible for Heartspring's alleged failure to receive a copy of the 2007 IEP until January or February 2008, and Heartspring's alleged failure to implement its goals promptly.  If the Hearing Officer determines that there was a delay or failure to implement the goals of the IEP, the Hearing Officer shall make specific findings as to what goals were affected and whether the delay in implementing or failure to implement the goals denied Student a FAPE as a result.  The court remands to the Hearing Officer the issue of whether compensatory education is appropriate to compensate Student for any delay in implementing or failure to implement any specific goal or goals contained in Student's 2007

IEP that denied Student a FAPE.  The court, however, determines
that Student is not entitled to compensatory education based on
Student's regression as of July 2010, as Student's regression at
that time was caused by the change in his medication.  Finally,
the court rules that the DOE need not reimburse Plaintiffs for
Student's expenses at Loveland Academy after he turned twenty-two
years of age.

The court orders that, on remand, the Hearing Officer
shall limit the issues to the ones identified in this order.
Accordingly, the parties shall not attempt to relitigate any
issue already determined or to broaden the issues on remand.
This court recognizes that Hearing Officer Maile is no longer
available to preside over a remand, but an administrative
proceeding appears better suited than a judicial evidentiary
proceeding for at least an initial resolution of the identified
issues.  Should any party file an appeal in this court from the
Hearing Officer's decision on remand, a new civil number shall be
assigned to that appeal and the Clerk of Court shall assign the
appeal to the judges currently assigned to the matter--Judge
Susan Oki Mollway and Magistrate Judge Richard L. Puglisi.

The Clerk of Court is further ordered to keep copies of
the Administrative Record on Appeal, Petitioner's and
Respondent's exhibits, and transcripts until further ordered by
this court or until notified by the parties that it is no longer

necessary to keep those documents in this court, rather than in a long-term storage facility.  The parties are therefore ordered to notify the court when those documents are no longer necessary (ie., when the time to appeal the Hearing Officer's decision has run without an appeal being filed or when an appeal is taken to state court).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 11, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

B.T. v. Dep't of Educ.; Civil No. 10-00456 SOM/RLP; ORDER AFFIRMING IN PART AND REVERSING IN PART HEARING OFFICER'S DECISION; ORDER REMANDING LIMITED ISSUES TO HEARING OFFICER